**Richard BAUMGARTNER, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–2201.

Court of Appeals of Alaska.

March 2, 1990.

1. Having reversed on this ground, we find it unnecessary to decide Smith's other claims.

Robert Herz, Asst. Public Defender, Kenai, and John B. Salemi, Public Defender, Anchorage, and Carol A. Brenckle, Kenai, for appellant.

Tonja Woelber, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Richard Baumgartner was convicted by a jury of one count of misconduct involving a controlled substance in the third degree, cocaine, a class B felony, in violation of AS 11.71.030(a)(1). He appeals contending that the trial court erred in failing to suppress new evidence discovered subsequent to a search warrant served for earlier offenses. We agree and reverse.

Baumgartner was wanted by the police for two alleged sales of cocaine during an undercover operation. Three months elapsed between the time of the sales and the police decision to arrest Baumgartner. During that time, Baumgartner had changed residences and left the state. Upon learning that he had returned to the state, the police decided to arrest him at a residence where they expected him to be found. On January 9, 1987, State Trooper Eugene A. Kalous appeared before Magistrate Robin L. Turnbull in Kenai and testified under oath in support of a search warrant. Officer Kalous informed Magistrate Turnbull that a two-count arrest warrant for misconduct involving a controlled substance in the third degree was outstanding regarding Baumgartner. The first sale occurred on October 9 and the second on October 10, 1986. Officer Kalous further testified that the ongoing undercover investigation that delayed the arrest of Baumgartner had been completed and that he had information that Baumgartner was currently residing in a local residence in Kenai. He generally described the residence and set out the following information to indicate that Baumgartner might be there:

> Two months ago the Kenai police department and also at the time these cases took place on Baumgartner he resided at a log residence on Fourth Avenue in Kenai. And at that location was a brown Dodge van, a later '78 model, I believe registered to a subject by the name Madel (ph) or Mendel, M–E–N–D–E–L. I received that information from Sgt. Kalar who was at this location last night and did some surveillance at around 11:00 o'clock p.m. Sgt. Kalar told me last night around midnight that there was the same van he believed that lived also at Fourth Avenue and also at this location described on the search warrant. Sgt. Kalar also at my request made a telephone call to what he believed to be the Rick Baumgartner residence, ... where a female answered the phone. Sgt. Kalar told me that he asked for Rick, the female told Kalar—of course Kalar was unidentified—the female told Sgt. Kalar that—to call back at about 20 minutes. The female didn't indicate whether he was there or not but to call back in 20 minutes. The female also didn't indicate anything that this was a wrong number or anything like that.

Officer Kalous told the magistrate that the phone number was assigned to the residence previously identified as the target for the search warrant. Officer Kalous also told the magistrate that he had maintained surveillance outside of the residence. He observed the dark brown van early in the morning at around 1:30 a.m. and later between 9:15 and 9:30 a.m. Finally, Officer Kalous told the magistrate that Baumgartner was a flight risk, he had been known to brandish weapons and that the police could not afford to simply wait around until they spotted Baumgartner to pick him up.

The issue in this case concerns whether there was sufficient probable cause to warrant a finding that Baumgartner would be at the residence in question at the time it was to be searched. *See, e.g., Snyder v. State,* 661 P.2d 638 (Alaska App.1983). In

essence, the question is: was there a sufficient nexus between Baumgartner and the residence to warrant a finding that Baumgartner would be found at the residence if it were searched. In making this determination, the magistrate could only consider the oral testimony and other evidence presented to her. When we review the transcript of the warrant hearing, we find only two items of information: first, a van had been regularly seen at a prior residence of Baumgartner's and was then seen at the residence in question at about the time the search was to take place. The van, however, was registered to a third party, Medel or Mendel, not Baumgartner. The magistrate was given no information that Baumgartner had ever been seen in the van or seen driving it. The only information in any way linking Baumgartner to the vehicle was that it had been seen near his former residence. The magistrate was not told how many people resided at that residence or why there was probable cause to believe that Baumgartner would be using the van at about the time the search was to take place. Based on these facts, there was an insufficient nexus shown between the van and Baumgartner to warrant a finding that the presence of the van at the residence in question supplied probable cause that Baumgartner would be present.

Second, the telephone call to the residence inquiring if "Rick" was there is insufficient to establish probable cause. Baumgartner was not identified by his total name, nor was there any reason presented to the magistrate to support a belief that the unidentified female was indicating that Rick Baumgartner would be available in twenty minutes. We consequently conclude that there was insufficient probable cause to establish a nexus between Baumgartner and the residence to be searched to justify the issuance of a search warrant.

In reaching these conclusions, we realize that the police probably had substantially more information than they disclosed to the magistrate. It is possible that police officers had observed Baumgartner driving the vehicle and using it as his own. It is also possible that the police officers knew that Baumgartner's girl friend was renting or leasing the residence in question, and that her close relationship with Baumgartner made it clear that her response to the telephone call established that Rick Baumgartner would be present at a later time. This information, however, was not disclosed to the magistrate. In summary, looking only at the testimony taken by the magistrate and construing it in the light most favorable to the state, we cannot find probable cause.

The judgment of the superior court is REVERSED.[1]

---

1. Baumgartner raises a number of other objections to his conviction, including claims that a second search warrant was also invalid. Our conclusion that the original warrant was invalid necessarily establishes that the second warrant and its fruits were fruits of the original invalid warrant. Consequently, it is unnecessary for us to further address those issues.